16194

STATE v. GEORGE

(52 S. E. (2d) 262)

*Mr. Charles W. McTeer,* of Chester, for Appellant,

*Mr. W. G. Finley, Solicitor,* of York, for Respondent,

March 9, 1949.

GRIFFITH, Acting Associate Justice.

The defendant-appellant appeals from a conviction and sentence under an indictment charging him with maintaining a public nuisance in the Town of Fort Lawn, Chester County, South Carolina.

The first exception alleges error in refusing defendant's motion for a directed verdict of not guilty, based upon the ground that the evidence, as a matter of law, did. not establish the crime charged.

The evidence relied upon by the State tended to show that about one year prior to the trial· the defendant opened his

place of business in a thickly settled, residential section, of the Town of Fort Lawn, on a heavily traveled street, which is also State Highway No. 9. The building is large, and is located about 100 feet from the street. The defendant sells, under proper license, beer and wine, and also sandwiches, cold drinks, candies, tobacco products, and the like, but has no general stock of merchandise, and his principal business is the running of a dance hall, the music therefor being furnished by what is commonly known as a piccolo. The defendant has three big nights weekly, on Wednesdays, Fridays and Saturdays. As a general rule the place of business is not opened until some time in the afternoon, and on the three days mentioned, remains open until a few minutes before midnight. Complaint is directed solely to the occurrences on the tri-weekly night gatherings, and hereafter the summary of the evidence shall refer to those night occasions.

Large crowds, variable in size, attend regularly, estimated to run as high as 300 to 350 people, both men and women, and come from a wide area, including Lancaster and Great Falls, each about eight miles distant. They drink beer, wine and liquor (but there is no claim that the defendant sells liquor), operate the music box, dance, loiter in the adjacent yards, some becoming hilarious, drunk and boisterous, and frequently using profanity, which at times is of the vilest sort. Although small rest rooms are provided, some of the partons commit unprintable indecencies in the open, lighted yards. A few of the patrons have been arrested from time to time and charged with crimes, which were disposed of before the local magistrate or mayor. The magistrate's record showed approximately twelve convictions, consisting mostly of either assault or disorderly conduct, but including one case each of discharging firearms, and carrying concealed weapons. The record of the Town Court was not produced. The defendant at times has reported some of these specific violations of the law, and testified against the offenders.

While the record shows, as before stated, that the defendant closes his place of business just prior to midnight,

it also shows that generally the crowds are slow in dispersing, and remain on the premises for some time thereafter, during which loud and boisterous conduct continues, aggravated by the blowing of automobile horns for unreasonable periods. This perhaps is due in part, at least, to the fact that a number of the patrons come and go by means of taxicabs.

The residents of the community are disturbed in their homes by the loud and boisterous noises, and disorderly conduct, and those in closest proximity are subjected to vulgar language, and acts of indecencies. One of the homes, approximately 150 yards distant, was shot into from defendant's place.

Some of the foregoing statements were in dispute, but the jury was warranted in finding the facts as recited, and, of course, the Trial Judge was justified in so viewing the evidence, in passing upon the motion for a directed verdict.

In the comparatively recent cases of *State v. Turner et al.*, 198 S. C. 487, 18 S. E. (2d) 372, and *State v. Turner et al.*, 198 S. C. 499, 18 S. E. (2d) 376, this Court in comprehensive and exhaustive opinions by Mr. Justice Fishburne, plainly declared the law applicable to the crime charged here, and it is wholly unnecessary to restate it now. Those cases make it clear that there was no error in refusing the motion for a directed verdict in the case under consideration.

The defendant earnestly urges that there is no evidence that he "knowingly and willfully" committed the crime charged. But the evidence is undisputed that the defendant personally managed and operated the place at all times. Ordinarily, and especially under the facts of this case, specific notice to abate a public nuisance is not a prerequisite to an indictment. 46 C. J. 817.

By the second exception error is alleged in the supplemental charge to the jury. While the jury was deliberating it returned to the courtroom to make inquiry of the Presiding Judge as to what sentence would,

or could be imposed, for the crime charged. Thereupon the jury was instructed in detail as to the discretion of the Presiding Judge with respect to a sentence, and among other things the jury was told that any sentence imposed would not require defendant to close his place of business. After rendition of the verdict of guilty, the Court sentenced the defendant to serve six months at hard labor or pay a fine of $600.00, and abate the nuisance, with a proviso that upon paying $100.00 the sentence would be suspended and defendant placed on probation for two years, and among the conditions of probation was the requirement that he close his business at sundown. Defendant complains that by the sentence requiring him, in abating the nuisance, to close his business at sundown, for all practical purposes closed his business, as substantially all of his business is done at night; and, hence, it is argued that the sentence is contrary to what the jury had been charged.

Considering the supplemental charge as a whole, there is no merit in the complaint. The distinguished Trial Judge clearly let the jury know that in the event of a verdict of guilty that, while the defendant's business would not be closed in the sense that it would be padlocked, it would have to be closed at nights. He said in part: "There are some nuisances, *per se,* and you would padlock them if found guilty. As I explained to the jury, there are none of these things unlawful in themselves: music is not unlawful, and selling beer under license is not unlawful; so, I couldn't padlock his place. And complaints were, what he was doing there on Wednesday, Friday and Saturday nights. And if the jury found a verdict of guilty, I would say he was to be restrained from carrying on his business after dark or sundown or some other reasonable time in connection with his business;"

The only other exception has been abandoned. Accordingly, the judgment is affirmed.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.